Case on the docket is in the marriage of, uh, Hendricks versus Stefan. Stefan number five. There's 12 0 2 1 9. Mr Coaching, when you're ready, you may proceed, sir. Let's wait just a minute here and let Mr Lacey Okay, whenever you're ready, Or this is a case regarding a petition to modify child support filed in 2011. Court entered an order granting petition to modify child support back in February 2012. Holding that the husband, my client's income was, in fact, substantial change of circumstances and that the courts presumed the cost of living increase the child. Now, to go back a little bit, uh, judgment. Dissolution was 2001. There was a modification to it allowed for child support to be increased. And the wife back in 2008 had filed a petition to modify child support as well. Um, there ended up being an agreed order entered by child support. The wife was represented by council at the time. Husband was pro se. The increase in child support went from $120 to $350. There was retroactive child support, 920. And the husband, although there was no penny rules for cause, even agreed to pay the wife's attorney fees of approximately $1100. Husband was also provide insurance for the child. Um, in addition, the wife was able to receive, uh, husband paying for one half all uncovered medical, hospital and even counseling expenses. But most importantly in that 2008 decision, the wife requested and received that the husband was to pay one half of all school activities, extracurricular activities, school tuition fees, lunches, uniform costs and any other costs associated with the activities. Uh, by all indicators, the wife believed this was a very good deal for herself, her child, uh, in this particular agreement. Um, I don't believe there's the record reflects that $350 in child support that was agreed to at the time was an agreed to statutory deviation of child support. Child support should have been approximately $546.94. Let me ask a question. The $692, I think it was that the trial court ordered, was that 20% of his properly calculated net income under Section 505? Yes, sir. No issue about that? I mean, in the briefs, there's talk about, you know, various other ways of looking at it, but the trial court didn't calculate net income, and that's 20%, right? That's correct, Judge. We stipulated on that, that his income at that time was $690 and some change, uh, if the court were to specifically apply 505. For the various reasons, though, Judge, we believe that there was not a substantial change of circumstances as to my client's income, uh, that the required by statute. And I believe in my brief, we talk about in 2008, my client's base salary was $45,510. His total income was $49,000. 2009, the income was $47,000. Base salary was $47,000. Total income, $49,000. Again, so actually his income, total income actually decreased. This is on page 10 of my brief. And then 2010, again, $47,000, $48,000, $44,000. So a difference of $209, $210 of approximately $700. Total income went up $2,000, $51,000. Okay, but what is the total income? What does that mean? Uh, total income, he did it one more time. This is an individual who works for the prison. Well, why are we talking about his base salary or gross income when all these child support calculations are defined in the act and based on net income? The reason, Judge, is because to do a comparison of what his income was back in 2008, he filed a petition to modify child support, and that was his income back in 2008. There has only been approximately 2% increase in the gentleman's base salary and even in his total income. Well, I understand, but my point is if child support is based on net income, why aren't we comparing net income for these various years to determine whether or not there was a significant change in circumstances? Okay. Well, Judge, because – I mean, you talked about his gross income. Scott talked about social security wages and herbary. But my point is if it's always calculated on net income as defined in the act, because a person could have a substantial increase in net income and gross income not show it or vice versa. Well, Judge, I think I do a little bit. In 2008, I cited my brief that if he did his net income in 2008 back when the wife filed the petition to modify child support, the child support should have been at approximately $546. So that was his truly net income in 2008. Okay. So if you compare net income to net income, it would go from $546 to $692. That's correct. And that's only – that difference would only be 20%. So if you extrapolate that out, it sounds like maybe there was a fairly substantial addition to net income over those years if it makes $150 difference in child support. Well, again, the wife was represented by counsel at the time, and obviously she felt that she was getting a good deal for herself and her child when she agreed to a statutory deviation back in 2008 of $350. Okay. And at that time, if she would have said this is my child support, I want my child support, the court would have ordered $546. She decided to get all these other additional benefits of extracurricular activities, lunches, fees, and whatever that the husband agreed to. And so the argument is since 2008 when she filed that initial petition to modify, Your Honor, versus the time that she filed it again in 2011, you're only talking about approximately – even if you look – you're looking at salaries and income, even net income. You're only talking about approximately 2.05% difference of his base salary and total income between three and a half years, between 2008 and 2011. And our argument, quite frankly, is there has not been a substantial change of circumstances as to my client's income from 2008 to 2011. I guess my question is if based on his net income between those years, child support at 20% would have gone from $546 to $692, that's more than a 2% difference. I mean, we're arguing numbers here. Yeah. But you understand what I'm saying? I mean, and that's what we base child support on is net income. That's correct. So if he's only made – had a 2% difference in his income, how could it jump $150? Child support – Well, Judge, I understand what you're saying. I – I mean, I'm not going from the 350 that was agreed on. I'm talking about the 546 that you say would have been 20% of his net income. I agree, Judge. That is the – but I guess – That's more like a 20% or more increase. But, Judge, I think the statute, though – I hear what you're saying, but I think the statute is the burden, as this appellate court has held in the case that I cite, Dufry, the burden – D-E-A-R-D – D-E-A-R-D-U-F-F – the burden is on the why to show that there's been a substantial change of circumstances. That's the statute. And the argument, and I think the brief, illustrates there's not been a substantial change of differences between my client's income in 2008 and 2011. And I think what the court – and I mentioned this in my brief, but if you look at the petition to modify that was filed in June of 2011, I think it's deficient on its face. It alleges that a substantial change in circumstances has occurred since the agreed order for modification of dissolution of merits was entered, which warrants an increase. To support that, it says respondent has received an increase in his wages and is no longer paying the statutory percentage. He wasn't – by agreement, he wasn't paying the statutory percentage back in 2008. And my point is this. By the burden being on the why, Judge, we believe that he pursues a statute of substantial change of circumstances. And I've reviewed the case law extensively. I've not seen where an individual's income over a three-and-a-half-year period deviates approximately 2 percent, which is lower than the cost of living. The Consumer Price Index warrants a substantial change of circumstances. And I think the legislature has used that language, not just the change of circumstances, but it's substantial. And it uses it purposely so that as the cases that I cite, merit-free plots, we don't end up in what's called a sliding scale type situation, where every time one party is raised a dollar of income, the party is able to come in once again and get an increase of 20 percent of that dollar. And in fact, I cite cases that talks about – and Plotts is one of them, I'm a third district – that the petitioning parties must show that there has been a material, a material change of circumstances, not just a little increase in someone's income. In addition, Your Honor, we believe the petition is deficient because there was absolutely no testimony whatsoever that the needs of the mother had changed at all. In fact, the W-2s that we attach show her income had actually gone up a little bit. The trial court did find that it presumed that there was an increased need of the child over that three years. Well, most cases, though, have held a two-pronged approach, is that you've got to show some necessity of the child or some changes that warrant an increase in child support for this child. And I think what's important is this, the court considered, is that the husband in this case has the child 47 percent of the time back in this trial. So any increase that the court would have presumed to the mother at 53 percent, in all due respect, the same presumption would go with the father who has this child 47 percent of the time. In addition to that, the court relied upon a Fifth District case of H-E-I-L Hill to say that, well, I can presume that there's been an increase. The problem is that case is highly distinguishable in that in that particular case, in marriage of H-E-I-L, there was a doubling of the income from $10,400 to $23,000, significantly different from our case at hand. In addition to that, Hill, there was tons of testimony during the time period from 1989 or 1978, excuse me, to 1989 regarding the raising of the children, of how costs and expenses have occurred over approximately an 11-year period. This was a trial that was stipulated, presented with the evidence on it. There was absolutely no testimony from the mother, from the child, to warrant this substantial doubling of child support. There's no testimony the child is not receiving what she needs to receive. There's no testimony she's a special needs child. No evidence whatsoever in the testimony that would warrant a doubling of the child support increase. Mr. Cochin, if this were a brand-new divorce instead of a petition to modify, and the court awarded joint custody and parents split half the medical and parents split half the school activities, the court could still award the 20 percent. Correct, yes. And there were no deviations in the court's orders when it was originally set, the child support, right? I'm sorry, Judge? When the original child support was set, there were no statements by the court, there's nothing in the record as to why there was a deviation, was there? That is correct, Judge. And I think that's one of the arguments, though, that the wife makes and says that, well, the court has to find that there was some deviation back in 2008. I'm not aware of any case law where there's an agreed order that the judge has to find that there's a deviation. Otherwise, our trial court would have to be sitting with a calculator every single time and say that I find that there's a deviation. I mean, the practical matter is the wife had counsel. Can a parent weigh the needs of the child under Illinois law and deviate from the statutory percentage? Judge, I believe that an individual who believes in their best interest with their attorney can make certain agreements that they believe is in the best interest of their child. So I agree that, yes, the public policy, I agree, public policy is there, that we do not, we want to be careful with child support and things of that nature. I agree totally. But I think as a practical matter we have here is somebody who's having their cake and eating it too. We have a husband, there's nothing in the record back when she filed a petition to modify support, there's nothing there that he didn't pay his child support back then. She asked for these certain things. He even agreed to pay her attorney fees of $1,100. Well, unless there's a rule to show cause, that doesn't happen for a petition to modify support. We have a husband who did what the wife requested. And now, quite honestly, you want this, that's fine. You're represented by counsel, that's what you want, fine. And now, a couple years later, she wants her cake and eat it too. And, you know, I understand public policy, but I think I also understand the premise of family law is I don't think it's good posturing that when one party has competent counsel and asks for certain things and receives it that they believe benefits their child. To come back into court three and a half years later with that, with his income only increasing 2%, 2%. That that's a substantial change of circumstances. And I think that's what makes this case different. And that's I agree. We start the beginning like a custody case, right? We start the very beginning of all bets are off. Thank you. You'll have a chance when we got her. Whenever you're ready. Please support. I represent. The mother of the minor child in this case. And the trial for our perspective to not abuse discretion in this case, when it granted her petition to modify the judgment of dissolution of marriage and prior child support order in this case, and granting increase in child support. She filed her request. Alleged substantial change in circumstances. Due to the increase in income of the father, Mr. In addition, alleging that he was not paying the correct percentage of statutory child support. In her petition. Those standards are set forth in section 510 of the Illinois marriage and disillusioned marriage act. Regardless of modification and custody, and the court did rule in this matter that the modification should be granted that there was a substantial change in circumstances. Not only because Mr. income had increased substantially. But it also took into consideration the presumed increased needs and expenses of the minor child in this case, due to obviously her age having increased and cost of living. In several cases across the state, particularly some cases by 5th district and remarriage of Davis. I'm not sure how we pronounce that case. That was cited by the court as well. What was this child's age in 2008? I would have to look to be exactly specific on that. Your honor. She's an early teenager. I know she's born in 1997. Your honor. With regard to then, once you've looked at section 510, and you have a substantial change in circumstances, then you're back to section 505 with regard to child support. Section 505 is clear and clearly sets forth the guidelines for determining child support. It states that they shall be followed. One child obviously is 20%. That they shall be followed. There is a rebuttable presumption that they should be followed. Absent the other side having the burden of proof of showing that there's compelling reasons why the guidelines should not be followed. And that burden rests with Mr. Stephan in this case. And the court found that there were not compelling reasons to deviate from the guidelines. We have sort of a unique situation in this case. Well, unique, however, if you hadn't practiced any family law or had it practiced in front of you, this type of thing does happen where you have an agreement that parties reach. However, this agreed order from 2008, it doesn't say that there's a deviation from what was 20% of the statutory guidelines. It just says, here's child support. They reached an agreement. It's $350 a month. I didn't represent Ms. Hendricks prior to being involved in this case. I have no idea it's a deviation in guidelines. The trial court has no idea that it's a deviation from the statutory guidelines. Unless somebody sets forth in this case that it's been a deviation of guidelines and what were the reasons for it. And in this case, was it an argument for a deviation? In other words, did Mr. Koshin have an opportunity to make the same argument he made here? He's already paying half for extracurricular activities. In this case, he made that argument in essentially our stipulated brief trial that we presented to the court. That was one of their defenses and things that they were alleging to the court, which the court denied. He said, no, I'm just going to follow the guidelines. I think that comes into play, though, in terms of, as the court pointed out, in looking at what the income was of Mr. Stephan. I have no idea where 2% comes from. You know, it doesn't come up anywhere in my math in terms of 2%. You know, Mr. Stephan is here and has made a lot of claims as to what was available to the court at the time of this 2008 order. But quite frankly, none of that was made available to the court. The court had no information. They're presented with an agreement. There was no presentation to the trial court. There's nothing stated in this order about what his actual net income was at that time and what 20% would have been. It's great to try to calculate that in hindsight. I don't know that my client had that information or knew what his net income was at that time. I don't know. I didn't represent her at that time. And when it's not reflected in the proceeding before the court, the court doesn't know. And any attorneys involved don't know at the next point. I would point out, just as Kate, you were asking, that the provisions that they imply were an added burden to him in 2008 are customary provisions that are ordered in every case, even when 20% child support is set. You know, the non-custodial parent having the obligation to provide health insurance is a standard provision. Paying half of uncovered medical expenses is a standard provision with regular child support being set. I have many cases where half of extra curriculars and extra fees are also ordered, even though there is 20%. There is not in the factor set forth in 505, even talking about deviation, it does not actually reference as a factor considering the schedule of the child or how much time the child spends with each parent. Some courts have considered that, but it is not a factor set forth in the statute. There again, it's their math that calculates that this child is there 47% of the time. The court can look at what the actual schedule is and make that determination. However, there was a somewhat equal time schedule in the original judgment of dissolution of marriage. This 2008 order actually changed it to less than that. It did not give him more time because the child was now in school, and it changed him to having weekends. And then they did switch in the summer, so he had week time and she had weekends. I don't see how that can equate to him having the child 47% of the time when mom has the child for nine months of the year, Monday through Friday. Plus them obviously having holiday visitation time as well. So that's not a factor, again, that would allow for the court, that would justify the court finding a compelling reason to deviate from the statutory guidelines. You know, everything here is within the discretion of the trial court. Mr. Potion mentioned a couple of times reference to testimony or no testimony from my client. Well, as the court can see from reviewing this brief, there was no testimony from either party because we just, we stipulated information in briefs to the court. So there was no testimony from either party. And that was done by agreement. That was done by agreement, Your Honor. You basically turned all the facts and figures into the judge and said decide the case. Yes, and I think because it wasn't his discretion. You know, it comes down to the facts and the figures. It comes down to the mathematical calculations. You know, as you pointed out, Justice Stewart, there certainly has been a substantial increase in his pay. By my calculation from the 2007 W-2 that was provided to us, which would have been the last W-2 available prior to that 2008 order. Then comparing that to his last paycheck stub in 2011, you have a more than 30% increase in his pay. You know, that's from the information that I could view and was provided in this case. How much was available to her prior to 2008? I don't know. I didn't represent her. But certainly, even their admission that child support from their calculation in hindsight would have been 500-something in 2008, and now it's 690.34 is obviously a substantial increase in pay. Part of the public policy reasons behind having, you know, child support and the reason that we set it is so that this child can enjoy the standard of living that she would have been accustomed had these parents stayed together. This child should receive the benefit of the fact that he has had an increase in pay. I certainly understand the fact that they're pointing out primarily these were cost-of-living increases, although he does receive overtime and additional compensation at his job as well. But at some point over a period of years, when you are annually receiving cost-of-living increases, your child should receive the benefit of that. At some point, it becomes substantial. You know, Ms. Hendricks was not in here year after year asking for a child support increase. You know, from our point of view, Mr. Cephan has got off quite easily for many, many years playing very, very little child support. And at this point, she said, you know what, I mean, I just want the statutory percentage. I just want to have the statutory percentage. You know, certainly many, many times, for a myriad of reasons, parties will agree not to go to trial, not to have the stress, not to have the time and the money invested and reach an agreement. You know, who knows what the considerations were by the parties at that time to reach this order in 2008. But they did reach an order. He received the benefit of it for several years by virtue of the fact that she did not force him to pay the statutory percentage. But had they appeared before the court, he probably would have been ordered to pay. I want to give you a chance to address one other issue that was raised, and that's the denial of the admission of the paycheck. Yes. What difference would that have made? I think it's an – you know, you can argue that either way, Your Honor. I don't know if it would have made a substantial difference. My point was, at some point, you have to have a closing evidence. My concern was that, depending on how many paychecks had gone by, that he could have purposely not worked overtime. He would have had, because it was November to December, perhaps some holiday pay or vacation pay that would have been at a different rate. And that's my concern. Okay. But you stipulated to the amount. That's why I was a little confused about that. Would it have changed the stipulation? It could have been. Quite frankly, I didn't calculate at that point once the court denied it. The calculation was made based on his year-to-date income of the most recent paycheck stub that we had at the time that we presented the exhibits to the court. So that would have been, I'm not sure the exact date without looking, in October, perhaps paycheck stub in 2012. But that was my concern, and certainly that happens in cases where parties then purposely stop working overtime to reduce their pay, knowing that they're going to court on a child support issue. Okay. Thank you. So from our perspective, Your Honors, we would ask that the trial floor ruling be affirmed. It was in the court's discretion to grant child support, and it did follow the statutory guidelines that were set forth. And we believe that the ruling should be affirmed. Thank you, Scott. Mr. Cochin, rebuttal. In the end, the appellate court is going to have to hold that his income from 2008 to 2011 was a substantial change of circumstances. And I reviewed the case law statute. I don't see that. And I want to make this really quick. In all due respect, it's a misrepresentation that there's been a 32 percent increase in income from 2007 that was just stated until now. What counsel did, probably inadvertently, is use 2007 income, which is the total income. Well, that's left in his base salary to get $39,000 to 2010. Why does it matter? He just started his job. He didn't work the entire year. So you cannot compare total income of $39,000 when his base salary is $42,000. But what income did you use to calculate the $546,000 that he would have paid if he paid 20 percent at the time of the entry? Judge, we drew out the entire 2008 year. And I think the order of agreement was sometime in the summer or early fall. We just drew 2008 out, to be fair to everybody. But he worked in 2008. That amount was $546,000. So 32 percent, no. The difference is approximately 2 percent, which is less than the consumer price. Well, the difference between $546,000 and $690,000 is about 25 percent. And so, I mean, if that's what – if it's that big of a difference in 20 percent of the net income, it should be the same for all of the net income. You agree with me on the math there, won't you? Well, no. Well, I'd have to look at that, Judge. My numbers, we went through them pretty meticulously, and the clerk finds something different. But our numbers was 2008 should have been approximately $546,000 between then and 2010, the other figure. Judge, again, there's case law that cited that the child court gave no credit whatsoever to the increased time that the child had, the spends with my client, nor the additional costs, tuition fees, that she bargained for. This is what she wanted when she had counsel. And when I talk about – you said there's some different figures. Our equitable approach to the court was let's go back to the difference of 2008, what he should have gotten, $546,000, versus the income now, and then let's do a comparison of an increase, what his income was, maybe 08 or 11. But, Judge, I just think it's not equitable, and I think there's a statutory basis for this, that she had the burden to show a substantial change of circumstances. She had the attorney. He agreed to all her terms. For whatever reason, she and counsel felt that was in her best interest and the children's best interest, and that's what he agreed to, Your Honor. And also, I want to make it clear, the reason why 2008 documents is attached as income is because there was stipulation not checking on the record. My client turned over his 2008 income up until that time period, mid-years, so his counsel and her was well aware of what his income was at the time of the agreed order. That's why the child court allowed the 2008 income in here. So for any insinuation that they didn't know is totally incorrect. For the following reasons, Judge, I believe the court abuses discretion in finding there could have been a substantial change in the process. Thank you. All right. Thank you, Mr. Cochin. Thank you both for your briefs and your arguments. We'll take this matter under advisement and issue a decision in due course. I'm going to take a brief recess, and we'll be back for our 11 o'clock case. All rise.